Patricia A. BROWN, Plaintiff,

v.

COUNTY OF SANTA BARBARA, a political subdivision of the State of California, John W. Carpenter, as Sheriff of the County of Santa Barbara, Defendants.

Patricia WINNIFORD et al., Plaintiffs,

v.

COUNTY OF SANTA BARBARA, a political subdivision of the State of California, John W. Carpenter, as Sheriff of the County of Santa Barbara, Defendants.

Richard DATTEL et al., Plaintiffs,

v.

COUNTY OF SANTA BARBARA, a political subdivision of the State of California, John W. Carpenter, as Sheriff of the County of Santa Barbara, Defendants.

Judi Lee MILLER and Moreen M. Kliegl, Plaintiffs,

v.

COUNTY OF SANTA BARBARA, a political subdivision of the State of California, John W. Carpenter, as Sheriff of the County of Santa Barbara, Defendants.

Civ. Nos. 75–3492–HP, 75–3978–HP, 75–4084–HP and 75–4177–HP.

United States District Court, C. D. California.

Jan. 14, 1977.

John M. Sink, Santa Barbara, Cal., for plaintiff.

George P. Kading, County Counsel, William R. Allen, Deputy County Counsel, County of Santa Barbara, Santa Barbara, Cal., for defendant.

Carin Ann Clauss, Assoc. Solicitor, Peter B. Dolan, Atty., U. S. Dept. of Labor, Washington, D. C., John M. Orban, Associate Regional Solicitor, U. S. Dept. of Labor, Los Angeles, Cal., for the Secretary of Labor, amicus curiae.

Evelle J. Younger, Atty. Gen., Talmadge R. Jones, Deputy Atty. Gen., Dept. of Justice, Sacramento, Cal., for the State of California and Attorney General for the State of California, amicus curiae.

ORDER DENYING DEFENDANTS'
MOTION FOR JUDGMENT ON
THE PLEADINGS

PREGERSON, District Judge.

This court is called upon to determine whether the 1974 Amendments to the Fair Labor Standards Act,[1] impermissibly displaced state sovereignty insofar as they extended to state employees the Equal Pay Act's[2] protection against discrimination in wages based on sex.

In addressing this question this court first turns to *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49

1. 29 U.S.C. § 201 et seq.

2. 29 U.S.C. § 206(d).

L.Ed.2d 245 (1976) that dealt with the 1974 Amendments insofar as they extended the Fair Labor Standard Act's minimum wage and maximum hour protection to state and local governmental employees. The Court's rationale in *League of Cities* was not that the attempted extension of federal authority reached activities beyond the scope of the Commerce Clause, see *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), but that such extension ran afoul of our federal system's limitation "upon the authority of Congress to regulate the activities of the States as States." 426 U.S. at 844, 96 S.Ct. at 2470. The 1974 Amendments to the Fair Labor Standards Act, 29 U.S.C. § 203, were not stricken across the board. The Court in *League of Cities* found the Amendments unconstitutional only "insofar as [they] operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions. . . ." 426 U.S. at 852, 96 S.Ct. at 2474. Since the Court so limited its holding of unconstitutionality, and since it did not consider the validity of the 1974 Amendments as applied to the Equal Pay Act, and since the Fair Labor Standards Act, of which the Equal Pay Act is a part, contains a severability clause, 29 U.S.C. § 219, *League of Cities* is not dispositive of the issue now before this court.

The plurality opinion in *League of Cities* does, however, set out a test for determining the validity of federal regulation of state governmental activities under the Commerce Clause. The question to be resolved is whether the States' decisions sought to be displaced by federal regulations are " 'essential to separate and independent existence,' [citation] so that Congress may not abrogate the States' otherwise plenary authority to make them." 426 U.S. at 2470, 96 S.Ct. at 2471. The Equal Pay Act merely affects state decisions to pay employees unequally on the basis of gender. Imposing an obligation to avoid discrimination in wages because of an employee's gender has a decidedly less direct and intrusive impact on state governmental functions than the restructuring of a State's employment relationships by imposing comprehensive minimum wage and maximum hour regulations. Moreover, the ability to arbitrarily discriminate in pay on the basis of sex can hardly be called an "undoubted attribute of state sovereignty" or an "important governmental activit[y] (*Id.,* 426 U.S. at 845, 96 S.Ct. at 2471, 2472) entitled to the reverential regard of Congress, particularly when such discrimination denies equal protection of the laws. The argument that the decision to discriminate in pay on the basis of sex is an essential and integral State function is both asinine and an affront to human dignity. In short, since the 1974 extension of the Equal Pay Act to the States does not impinge on their integrity as separate and independent sovereigns, that extension is a valid exercise of Congress' authority under the Commerce Clause, Art. I, § 8, cl. 3.

This court also concludes that the Fourteenth Amendment provides an alternative basis for Congressional power to extend the Equal Pay Act to the States. *League of Cities* expressly reserved comment on Congress' power "to affect integral operations of state governments by exercising authority granted it under . . . the Fourteenth Amendment." 426 U.S. at 852, 96 S.Ct. at 2474, n. 17. The exercise of that power was subsequently held valid in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976): "When Congress acts pursuant to § 5 [of the Fourteenth Amendment], not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority."

There was no Fourteenth Amendment basis to justify the minimum wage and maximum hour regulations considered in *League of Cities,* but the proscription against sex discrimination contained in the Equal Pay Act is clearly within the ambit of the Fourteenth Amendment. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Frontiero v. Richard-*

**114**

son, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The defendants do not argue that Congress lacks authority under the Fourteenth Amendment to require States to provide equal pay for equal work without regard to gender; instead they argue that Congress has not exercised its Fourteenth Amendment powers because the Equal Pay Act only expressly refers to the Commerce Clause. Although Congress has expressed its opinion in the preamble to the Act, Public Law 88–38; 77 Stats. 56, § 2, as to the Act's validity under the Commerce Clause, the defendants have not brought to this court's attention, nor has the court found, any legislative history indicating that Congress intended to exclude other applicable constitutional bases for the Act. This court agrees with the Third Circuit's analysis in *Usery v. Allegheny County Hospital Dist.,* 544 F.2d 148, 155 (1976), 13 FEP Cases 1188, 1193–94: "Nor do we attach any significance to the fact that the legislative history of the Equal Pay Act does not explicitly rely on the fourteenth amendment. In exercising the power of judicial review, as distinguished from the duty of statutory interpretation, we are concerned with the actual powers of the national government."

Since the court has concluded that the Equal Pay Act of 1963, 29 U.S.C. § 206(d), as applied to the States through the 1974 Amendments to 29 U.S.C. § 203, is a valid exercise of Congressional power under both the Commerce Clause, Art. I, § 8, cl. 3, and § 5 of the Fourteenth Amendment to the Constitution, defendants' motion for judgment on the pleadings is denied.

The Clerk of the Court shall serve copies of this Order, by United States mail, upon the attorneys of record for the parties appearing in this cause.